Paul Huck, who brings a world of experience to this task. He has sat with great distinction as a district judge in the Southern District of Florida, has sat with our court and many other circuits over the years, and we are delighted to have him with us today. Two other very brief observations that I wanted to make before we began. For those of you not familiar with our lighting system and the timing system, you'll see there's a time clock, and you'll see that there are three lights. There's a green light, which means, of course, you may proceed, a yellow or amber light, which is a two-minute warning, and a red light, which means that your time is up. I'd be much appreciative if you'd bring your remarks to a conclusion when you see that red light come on. It doesn't mean you've got to stop right in the middle of a sentence, but if you could bring your remarks to a close, we'd be much appreciative. One of my colleagues was fond of saying with regularity that the second observation for you as you proceed with your arguments, you may safely assume that we've had a chance not only to review the briefs and the record excerpts, but in some instances, we've had a chance to review the record as well. So feel free as you proceed with your argument to really go right to the heart of your argument. With that, welcome again, and we'll begin with the first case, the United States v. Titus Bates. And good morning, Ms. Calvert, welcome. Good morning. May it please the Court. I would like to address three issues for the Court today. The first is why a violation of 111B is not a crime of violence. The second is how Mr. Bates was completely deprived of his defense to the 111 count by the exclusion of all evidence related to him being the victim of a prior shooting. And finally, the third issue is why Mr. Bates' conviction for felon in possession of a firearm should be vacated in light of rehafe. A violation of 111B, either by use of a deadly or dangerous weapon or where bodily injury occurs, is not a crime of violence. 111B is predicated on the commission of any act described in 111A, which includes forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering. Of these means, this Court's pattern jury instruction only states that assault needs to be forcible and is silent on whether the other means need to be forcible. And indeed, in many instances, these other means can be accomplished by less than intentional force and therefore do not meet the requirement in Leocal of active employment of force. For example, someone could violate 111B by driving recklessly, crashing with a police car, and therefore interfering with an officer's pursuit of a suspect. Or someone could shoot at a lock to open a door to escape while officers are approaching, thereby intimidating those officers. By using a gun... Looking at case law, I note, and I might have this wrong, that there were at least five circuits, the 1st, the 5th, the 6th, the 9th, and the 10th, all of which have held that 111B categorically qualifies as a crime of violence. Yes, that is correct. They all got it wrong? Yes, Your Honor. Is there any circuit that has ruled as you would have us rule? No, Your Honor. But returning to my scenarios, they illustrate why the presence of a deadly or dangerous weapon cannot transform 111B into a crime of violence. A crime of violence requires the use of force against a person, but in these examples, the force was not directed at a person and therefore is not intentional. The other way to violate 111B by inflicting bodily injury is also not enough. It is result-oriented and does not necessarily equate to active employment of force. For example, what if someone is preventing an officer from arresting him by stiffening such that the officer struggles to pick him up and therefore strains his back? This person could be charged with violating 111B even though they did not use any force against the officer. Or what about a suspect who is fleeing from an officer and during the chase the officer breaks his leg? Although this suspect had no intent to cause the officer's injury, he can be charged with 111B because he impeded the officer and an injury occurred. Under the categorical approach which applies here, the court looks only at the statutory definition of the prior offense rather than the facts and presumes that the conviction rested upon the least of these acts criminalized. Using this approach, it is clear that the least of the 111, for example, intimidating or interfering, do not require the active employment of physical force. Would you agree that the Siler case holds that 111 defines three separate crimes and therefore it's divisible? Yes, Your Honor. Okay. And so if it's divisible, why would we not be applying the modified categorical approach? I believe you only apply the modified categorical approach to determine which one of the three crimes is at issue here. Both sides agree that we are talking about 111B and so once there's agreement on that, you return to the categorical approach. Furthermore, the 111B has to be predicated on one of the acts in 111A. And so categorically, 111B is not a crime of oath. The problem that you have textually though is that you've got 111B says whoever in the uses a deadly or dangerous weapon, including a weapon intended to cause death or danger, or inflicts bodily injury shall be blah, blah, blah. But the preface is in commission of any acts described in the subsection A. When you go back to A, you'll note that both of them have as preface forcibly assaults, forcibly intimidates, etc. So the problem that you have here is that you've got a crime that's described as falsely assaulting with a deadly weapon or falsely assaulting in a way that inflicts bodily injury. How could either of those formulations not be a crime of violence? It's because the level of force in this statute is not the same level of force required by Leocal. There are cases where someone has been convicted of a 111A violation where the force was very minute, for example, poking someone in the chest. And so the fact that forcibly is there doesn't mean that it rises to the level of the force required under Leocal. Second, the way it's written does not mean that forcibly applies to all of those other means. The statute says forcibly assaults and then follows with resist, opposes. It's not clear that forcibly applies to those other means. And indeed, the fact that the pattern jury instructions just define forcible assault, that's all it defines, I read to mean that those are all different means and that forcible doesn't to all of them. Did you want to go on to the other argument? Yes, please. Thank you. The second issue is that Mr. Bates was deprived of his right to present a complete defense to the 111 charge by the exclusion of all of the evidence related to his prior shooting, which was factually similar to what occurred in November of 2013, basically where in years prior, Mr. Bates was shot when he went to answer and knock at his door. The government has argued that this evidence is inadmissible because 111 is a general intent crime and thus only requires an intent to assault and not an intent to assault a federal officer. However, in FIOLA, the Supreme Court stated that ignorance of the official status of a person can negate the existence of a mens rea. Ms. Calvert, the record doesn't make it clear, at least to me, exactly what Dr. Schweikert was going to testify about and your co-counsel Ms. Dunn in discussing that issue acknowledged that the doctor's report went, quote, just a step too far under rule 704, close quote, but there's never a proffer that I see in the record. What exactly was she going to testify without in the absence of your client testifying that he, in fact, had made a mistake? Right. Dr. Schweikert would have testified that as a result of the 2002 prior shooting, Mr. Bates suffered from a trauma-related disorder that made him hypervigilant, particularly when he was in his home, and that the, well, she wouldn't have gone so far as to say how that would have caused him to act. Would it have been rationally impaired as a result of that trauma? No. I believe our intent was only to get in the fact that this prior shooting had happened under similar circumstances and that those circumstances, sorry, that he was traumatized in a way that we could then argue to the jury. Where's the link between what he did or what he says he did and why he did it in her testimony? It seems to me it's just out there. He had a trauma, and as a consequence of that, he was hyper-anxious. Right. But there's no link to anything in the record before the jury. I believe the link is in the 911 call where Mr. Bates is heard stating that he thought they were trying to break in, trying to come in. We could make that link. I think the thrust of the question is that Schwenke never seemed to make it clear that Bates' trauma, in fact, made him more likely to believe the officers were intruders, rather than that he was more likely to react irrationally to people at his door in general. Do I have that right, or have I misunderstood that? I don't think she made that distinction. She never said that this trauma made it more likely than not, or even to a degree of medical certainty that she could say that he was more likely to believe that the officers were intruders. It was just that any intruder would have triggered this irrational response. Is that right? Yes, given the circumstances at hand. Yes. Thank you. Thank you. I didn't mean to cut you off if you wanted to finish that point. You've reserved your full five minutes. Yes, Your Honor. I'm fine. Thank you. May it please the Court. Gabriel Mendel for the United States. I'm going to go ahead and get started. Every violation of 111, whether it be under subsection A or subsection B, requires a forcible assault. The reason why the jury instructions only define forcible assault is this Court's precedent indicates that 111A only states one crime. Forcible assault covers it all. Importantly, unlike all of the hypotheticals that were offered today, which find no citation in any case law of this Court, as this Court held in the Fallen case, a violation of 111A requires, quote, a willful threat or attempt to inflict bodily injury. It cannot be reckless or negligent or accidental. It must be willful. So Leocal is covered. Every violation of 111A is going to have a volitional willful act. So with Leocal covered, we turn to Curtis Johnson and the question of, is there enough force? And Ms. Calvert is correct. There may be violations of 111A that do not have enough force, but we're not dealing with 111A. We're dealing with 111B, which requires an additional... So if I understand the thrust of your argument, it's not that every crime stated in 111 would be a crime of violence. You would concede that violence, but that simply any crime arising under 111B is a crime of violence. Do I have that right? For purposes of today, Your Honor, we're not going to make an argument as to whether 111A categorically fits. I don't... If you look at the five sister circuits, some say that it doesn't, some don't answer the question. We don't need to reach that today. 111A gives us the volitional act and 111B gives us the necessary force. And since it's undisputed that Mr. Bates was convicted under 111B, that's the only question before the court today. And under 111B, you have two variants. You have the use of a deadly or dangerous weapon, which is a weapon that is capable, obviously, of causing death or serious bodily injury. And then you have force that, in fact, inflicts bodily injury. Those are our two variants. And either one qualifies. Starting with the weapons version, the fact that you have a willful assault and that it uses a weapon capable of causing death or serious bodily injury necessarily means you've met that Curtis Johnson threshold, which, in fact, only requires a lower level of force, right? It's force capable of causing any physical pain or injury. Well, a weapon, a deadly weapon, is more than enough. And in the words of the First Circuit in Taylor, quote, the element of a dangerous weapon imports the violent force required by Johnson. If anything, the bodily injury version is even easier because any force that results in that was capable of causing bodily injury. And again, in the words this time of the Tenth Circuit in Kendall, an assault that causes bodily injury by definition involves the use of physical force. This is an easy question. And that was the charge here. Correct, Your Honor. Did inflict bodily injury. That's correct, Your Honor. And in fact, in this case, either variant works. He used a gun. That's undisputed. He caused bodily injury. That's undisputed. So either variant works. In his brief, Mr. Bates misunderstands LEOCAL, and he suggests that LEOCAL stands for the proposition that the volitional act has to apply not just to the act itself, but to the injury that results. In other words, they're trying to argue that LEOCAL imposes a specific intent requirement. But that, of course, is incorrect. All that is required is that the act itself be volitional, not that the result be intended. And I'd refer this Court to its decision, the en banc decision in U.S. v. Bale-Valin from 2017, which dealt with Florida Battery. And in particular, Florida Battery, sort of similar to 111, has different tiers. And the second tier, which was at issue there, was Battery, simple offensive touching, resulting in bodily injury. And the defendant in that case tried the same argument Mr. Bates is trying here and says, well, I may have intended the battery, but I didn't intend the injury. And this Court held under LEOCAL, that's not the standard. The standard is, was the act itself volitional? And here, every violation of 111A requires willfulness, and so we have that. I'll turn, even though Ms. Calvert didn't get to the REHAFE issue, I think it's important that this Court address it, and so I'm going to discuss it. The REHAFE issue, as the panel is aware, is that previous to the decision... Why don't you turn to the issue that she did raise? Sure. The psychiatric evidence that Mr. Bates offered was plainly barred by the Insanity Defense Reform Act, which says that any non-insanity psychiatric evidence offered as any other defense, excuse, justification, is just plainly prohibited. And this Court has only recognized one exception to that. It's in the Cameron case, and that is the exception where a diminished capacity defense is offered that negates the mens rea of a specific intent crime. But as this Court already held in Edinger, 111 is not a specific intent crime, and therefore the Cameron exception doesn't apply. And Judge Huck, to your question, I think one of the issues the District Court struggled with is it wasn't clear in the first place what this evidence was being offered for, because the first thing that they say in the District Court below, and they say it in their briefs here, is, oh no, this isn't diminished capacity. And I understand why they say that, because they can't fit themselves into the Cameron exception. But when you look at the report of what they were offering, it clearly was a diminished capacity defense. The report said, quote, it is likely that Mr. Bates re-experienced increased anxiety and had a heightened need to protect himself, which rendered his ability to think rationally impaired. That is just pure diminished capacity. And so the District Court, understandably, made clear it wasn't going to allow that. So they start to backtrack and say, no, that's not what we're offering it for. But no one made clear what are they offering it for, because their problem is, if it's not diminished capacity, there is no other exception that gets this psychiatric evidence in. And their effort to link it to a mistake of fact doesn't work, because as this Court held in Alvarez, knowledge of the victim's federal status is never an element of this crime. And, quote, even a claim of self-defense based on lack of knowledge does not make knowledge an element of the crime. Well, if it's not an element of a crime, psychiatric evidence can't negate that element. It's not an element in the first place. So that's why the District Court properly excluded that evidence and didn't abuse its discretion. If you're right, why would the brother's testimony be admissible? The brother? Yeah. It depends what the brother was going to say. If the brother is going to testify— We had a proffer, though, did we not, about what the brother was going to say? I believe there was an argument that he was going to testify that the defendant was more scared after the shooting. And I think any testimony that was going to go to his mental state or his mental status is just lay testimony that falls into the same prohibition. If an expert witness can't testify about it, there's no reason a lay witness is going to get in the same— I thought the District Judge said that he would allow the brother to testify about, one, the facts surrounding the 2002 shooting, and two, the effects it appeared to have on Bates. I think the distinction— Did I misapprehend that? I don't know, Your Honor. It wasn't always clear what was being proffered and what the District Court was going to allow. But I think the point is that any psychiatric evidence is excluded under IDRA. And importantly, it's not a relevance question. That's—when you read their brief and you read the argument, they keep saying, well, it's relevant to our defense. IDRA took relevance off the table. Relevance was the problem, right? There was lots of psychiatric evidence coming in on a relevance standard. But what Congress decided is that's not going to be the basis of— No, no. I understand the argument that psychiatric evidence to go to diminished capacity in mens rea was inadmissible. I'm asking a different question. The trial judge said, if I had it right, that the brother could testify. He could get on the stand and say, one, here's what happened to my brother. There was an intruder. There was a trauma, blah, blah, blah, blah, blah. And this was my view of the consequence. This is what I saw in the behavior of my brother. How would that be admissible, particularly the latter portion of it, if the medical expert testimony was inadmissible? Both went to some kind of diminished capacity, some kind of inability to form the requisite intent, even as a general intent. Why would one be in and the other out? I guess that's really the question. And if you concede that the first could come in, the second, the brother, then why couldn't the testimony of the shrink come in as well? Your Honor, I'm not sure we do concede that the brother's testimony can come in. He was never actually called to the witness stand. No, I understand they didn't. They chose not tactically to call him for other reasons. But I was just curious. The judge allowed the brother's testimony to come in. It was sort of like, I'll give you half the loaf. Well, Your Honor, I think. I mean, the testimony of the brother insofar as he said there was an intruder, this happened, blah, blah, blah, might have come in, but it would have been of no real moment unless somebody turned the circle complete right. And I think that was the problem, Your Honor. Of course, Mr. Bates didn't have to take the stand. He had an absolute right not to. But without doing that, how you make a self-defense claim based on his mental state or based on what he was thinking at the time is very tricky. I think the district court was trying to give them some leeway in that regard because, as they acknowledged, that was their that was their only defense. And without that, they were going to have no witnesses and no evidence. And that's what they ended up having. And so without trying to speculate too much on what motivated the district judge, I think that may have been it was to try to give them something. Knowing the psychiatric evidence under IDRA is clearly barred. Maybe this is a way of giving them, as you said, half a loaf. If the court will allow me, I'd like to turn to the rehafe issue because I think it's important that the court write on this issue. What we have here is a indictment and a guilty plea that were accepted on 922G without what we now know of as the so-called rehafe element, which is the knowledge of a 922G defendant's prohibited status. Let me ask you a prefatory question about it, and it's not something that either side really addressed. Would rehafe govern the resolution here because 922A2 is different from 924E in that it doesn't require a knowing violation of 922G? No, Your Honor. I think the knowing requirement applies whether you're going to be subject to the ordinary 10-year statutory max of 924A2 or whether you're subject to the enhanced 15-year minimum of 924E2. We indicted and charged the 924E2 because we had advanced knowledge of Mr. Bates' criminal history. We knew that once he got convicted and this went to a PSR, they were going to indicate that he had three prior criminal convictions, and we think it's important when we know that that he be apprised of that at his guilty plea and be aware that unlike the ordinary 10-year statutory max, he may in fact be facing a significant mandatory minimum. And he was apprised of that. The problem we have, and we all agree on this, the problem is our indictment didn't have the knowledge of status that Mr. Bates knew at the time he possessed that he was a convicted felon, and similarly he wasn't apprised of that at his guilty plea. Now this is a non-jurisdictional defect. As this court recognized in the Reid case three weeks ago, the defect in this indictment is a missing mens rea element, and that's all it is. And so Mr. Bates waives the defect in the indictment by pleading guilty and by failing to object to his guilty plea is subject to plain error at this court because he didn't preserve the issue. Now he very much wants to avoid plain error because he can't meet it. So what does he argue instead? He claims that this is a jurisdictional defect in his indictment and therefore we don't get to plain error, but he's wrong. And I think it's very important that the panel write on this issue because we already have in the district courts we have prisoners trying to bring 2255s and avoid procedural default on the same flawed jurisdictional argument. So why is the argument flawed? You go to the 2014 decision in Brown where this court's opinion very thoroughly discusses this court's jurisprudence on indictment defects and delineates the vast majority of them which are non-jurisdictional from the few that are jurisdictional. And in particular on the jurisdictional side is Peter, which is the case that Mr. Bates relies on so heavily. And what the Peter case says is that if the specific allegations in the indictment negate criminality, then you have a case. He was charged with mail fraud. The object of his mail fraud was an alcohol license and a couple years after his conviction the Supreme Court says alcohol licenses don't count as property for purposes of mail fraud. So the language of the indictment itself, the specific conduct that defendant was charged with, affirmatively took his conduct outside of the criminal statute. That's what Peter stands for and that's what all three cases the Brown court could find or a jurisdictional defect was found. That's what they all had in common. By contrast, what we have here is a mere missing mens rea element. There is nothing in this indictment that is inconsistent with criminality, that negates criminality. We didn't, for example, charge him with being a felon in possession of a lawnmower. We didn't allege that he was ignorant of his status as a felon. We just omitted that element. And so what Brown tells us, Brown is on all fours, that is the exact fact pattern of Brown, is that yes, that makes it a defective indictment. That makes it subject to a motion to dismiss or an objection at a plea colloquy. But once you have waived it and now once we're on direct appeal, plain error applies. And he can't show plain error. He would have pled guilty anyway. The evidence of his knowledge is abundant. He had seven felony convictions. He had multiple sentences, 10 years confinement, 10 years confinement, etc. But more to the point, the huge benefit he got from pleading guilty was he kept this jury that was still deciding the more serious charges from ever knowing that he was a convicted felon. And his own attorneys, in making sure that there was no mention of that, discussed how extremely prejudicial it would have been to him if they had known of that. So he cannot meet the third or fourth prongs of the plain error standard and his convictions and sentence should be affirmed. I thank the panel for its time. Thank you. I'd like to focus on the Rahafe issue. Sure. Ms. Caput, you're aware that six days ago the Second Circuit ruled on precisely this point. The key issue is whether it's a jurisdictional defect or non-jurisdictional, correct? Yes. And you're aware that the Second Circuit just ruled last week? Are you referring to that? Yes versus Bald? Bald, yes. Yes, Your Honor, I am aware of that. This court, however, has not stated anything and I disagree that Reed addressed the jurisdictional question. Well, Brown does. But Brown is different because Brown, there the indictment cited the the the indictment did not include 924A2, which you need, according to Rahafe, in conjunction with 922G to actually define the crime. And also, it did not have the knowing element. So it's different from Brown. Rahafe did not say it was a jurisdictional defect. As a matter of fact, the indication based on this remand would suggest it was non-jurisdictional. He sent it back to I didn't use the word plain error, but that seemed to be the implication for remand. Right. Doesn't that suggest that it's not a jurisdictional issue? It is a suggestion, Your Honor, yes. But I disagree that even if the court applies plain error review that Mr. Bates would still lose. Mr. Bates, at the trial level, originally decided to plead guilty. Yes. He went to trial on the other issues, other charges. He did. I assume, as the judge pointed out, it was a strategic move on his part not to have put before the jury the fact that he was convicted of a crime, a felony. Right. So you stipulated to it. Correct. Which is typical. That was. So if this goes back, he decides to go to trial rather than having a stipulation that he was convicted of a single felony. He the evidence will be that he was convicted of seven or eight and he went through plea colloquies where they said, you know, you can no longer use a firearm and that would be just a wealth of very, very bad evidence against your client. You're telling me now if he went back, that's likely he would change his plea? Yes, I think it is. When you look at his conduct overall with respect to all of the counts, Mr. Bates initially did enter a guilty plea to the assault, then moved to withdraw it and went to trial on that count. His lawyer's strategic decision to have him plead to the felon in possession does not mean that he knew that he was a felon back in 2013 when the offense happened. Let's assume that was the standard back then and your client decided not to plead guilty. What would that trial look like in terms of his knowledge that he was a felon? I suggested that they would put forth evidence of the transcripts. Right. Is his seven or eight convictions? Seven or eight convictions, none of which resulted in him actually receiving prison. They were all probationary sentences. Most of them were. I think there was a sentence. But anyway, we all know that the plea colloquy provides, no, you're not able to use a firearm. So he would have heard that at least seven times. So instead of having a stipulation before the jury that he was convicted of a felony, he would have all these felonies and the transcripts of his plea colloquies, etc. Right. And assuming that they do say that, I don't know that they do say in all of them that you are not supposed to have a firearm. I don't know. But the issue is not whether Mr. Bates would have prevailed on this count. It's whether he would have actually decided to go to trial. And even if that evidence came in, we would still have a defense to that saying that these transcripts did not necessarily prove his knowledge or that he recalled it years later when the assault occurred in 2013. Or we still would have had a defense to the assault because none of these priors were violent where Mr. Bates was actually using a firearm. So just that the strategic decision does not mean that we wouldn't make other strategic decisions and decide to go to trial on that count. So you're saying it's likely that decision would be different even though the evidence would be overwhelming. Yes. Because of Mr. Bates' prior conduct, especially withdrawing a plea and then deciding to go to trial, I think the record shows that he is someone who would have gone to trial if he thought he had a defense, maybe not a good defense, but a defense on that count. If you want to take another minute since we started with rehab sort of backwards, I'm more than happy to give you an additional minute to argue. You need not take it, but I just want to. No. I think I made all the points I can, Your Honor. Thank you very much, and thank you both. We'll proceed to the next case, which is Willie Hill et al. v. The Employee